[Cite as *In re S.R.*, 2014-Ohio-2749.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: S.R.

C.A. No.    27209

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 12-03-146

DECISION AND JOURNAL ENTRY

Dated: June 25, 2014

CARR, Judge.

{¶1}    Appellant, Rodney R. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his minor child in the permanent custody of Summit County Children Services Board ("CSB"). Because Father was denied his right to be included on the case plan and receive reasonable reunification efforts from the agency, this Court reverses and remands.

I.

{¶2}    Father is the natural father of S.R., who was born January 23, 2004 in California. According to the record, Father is the only man who has ever been alleged to be S.R.'s father. Although Father's paternity has not been established through genetic testing, he was listed as the father on S.R.'s California birth certificate and was determined to be her father for child support purposes by a 2008 California court order.   Father has continued to reside in California throughout this case.  Although he spoke to the intake and ongoing caseworkers on the telephone

numerous times, he did not participate in any of the trial court proceedings. S.R.'s mother voluntarily relinquished her parental rights at the permanent custody hearing and is not a party to this appeal.

{¶3} Although the mother and S.R. also resided in California for an unknown period of time, they later moved to Summit County. On March 4, 2012, S.R. was removed from her mother's home pursuant to Juv.R. 6, along with her half-sibling, who is not a party to this appeal. The next day, CSB filed a complaint, alleging that S.R. was a neglected and dependent child. Father was identified on the complaint as the only alleged father of S.R., with an address in Sacramento, California.

{¶4} At the shelter care hearing, held the day after the complaint was filed, the intake caseworker informed the magistrate that she had just spoken with the mother and confirmed that, although CSB had the correct street address for Father, his actual city of residence was Vallejo, California, not Sacramento. The complaint was then successfully served on Father at the Vallejo address, where he has continued to reside and/or receive mail throughout these proceedings.

{¶5} The adjudicatory hearing was held before a magistrate on May 2, 2012. The mother appeared at the hearing, did not allege that there were any defects in the complaint or the proceedings, and stipulated to an adjudication of dependency. Father did not appear at the hearing. That same day, CSB filed a case plan that included reunification goals for the mother but not for Father. In fact, the case plan included no reference to Father or anyone else alleged to be the father of S.R. No explanation is offered on the case plan or anywhere else in the record for the failure of CSB to include Father in the case plan or the case planning process.

{¶6} The dispositional hearing was held before a magistrate approximately three weeks later. Again, the mother appeared but Father did not. The mother's counsel informed the

magistrate that the mother had "no concerns regarding the content of the case plan" or S.R. being placed in the temporary custody of CSB "while mother begins her [case plan] services." The sole focus of the dispositional hearing was on the services that CSB would provide to the mother to work on the reunification goals of the case plan.

{¶7} The ongoing caseworker, who had apparently just been assigned to S.R.'s case, testified that there were no objectives for Father ("none at all") on the case plan. She further testified that, if Father were to come forward, CSB would amend the case plan to include him. Apparently not fully informed about the facts of the case, she further testified that she had not heard from Father and that she had been unable to "get a good address" on him because the mother had not given her "any information" about his whereabouts.

{¶8} At oral argument, counsel for CSB conceded that the ongoing caseworker misled the magistrate about CSB's ability to locate Father. In fact, the record reflected at that time that service of the complaint had been perfected upon Father at the California address that the mother had provided to the intake caseworker at the shelter care hearing. Moreover, the record would later reflect, through the ongoing caseworker's testimony at the permanent custody hearing, that Father contacted the intake caseworker via telephone within days of receiving the complaint, he had continual telephone conversations with the intake and ongoing caseworkers during the pendency of this case, and he expressed his desire to have S.R. live with him.

{¶9} At the end of the dispositional hearing, the magistrate stated that he would place S.R. in the temporary custody of CSB and adopt the case plan "based upon mother's agreement and the testimony presented." The magistrate's journalized decisions to adjudicate S.R. a dependent child, place her in the temporary custody of CSB, and to approve the case plan were later adopted by the trial court and were not challenged through timely written objections.

{¶10} On July 5, 2013, CSB moved for permanent custody of S.R. The allegations included that, "[a]fter reasonable case planning and diligent efforts by [CSB], the parents have continuously and repeatedly failed to substantially remedy the conditions that caused placement [outside the home.]" It also alleged that S.R. had been in the temporary custody of CSB for at least 12 of the prior 22 months and that permanent custody was in her best interests.

{¶11} The permanent custody hearing was held before the juvenile judge on November 6, 2013. The mother again appeared and Father did not. At the hearing, CSB presented no evidence about the case plan, nor did any of the parties raise the issue that Father had not been included in the case plan or the agency's reunification efforts. Following the brief hearing, the trial court found that the mother of S.R. had voluntarily relinquished her parental rights. It involuntarily terminated Father's parental rights after finding that S.R. had been in the temporary custody of CSB for more than 12 of the prior 22 months and that permanent custody was in her best interest. In its journal entry, the trial court found that permanent custody, rather than an extension of temporary custody, was in S.R.'s best interest because Father had made no progress on the case plan.

{¶12} Father did not appear or participate in any of the proceedings in the trial court and was not represented by counsel. After the final judgment, however, the trial court appointed counsel to represent Father on appeal. Through counsel, Father appealed and raised two assignments of error.

{¶13} Although Father filed a motion for delayed appeal, this Court did not grant his delayed appeal, based on the position of the majority of judges in this Court that "App.R. 5(A) does not apply to parental rights appeals[.]" *But see In re B.C.*, 138 Ohio St.3d 1424, 2014-Ohio-692 (accepting a certified conflict on the issue of whether the delayed appeal provisions of

App.R. 5(A) extend to cases involving the termination of parental rights). This Court instead accepted the appeal as timely filed because the clerk's notation of service on the docket does not include Father's correct name. *See* App.R. 4(A); *In re Anderson*, 92 Ohio St.3d 63, 67 (2001); *Scott v. McCluskey*, 9th Dist. Summit No. 25838, 2012-Ohio-2484, ¶ 20 (holding that until the clerk makes a proper notation of service on the docket, service is not complete and the time for appeal is tolled).

{¶14} Oral argument was held on the parties' original briefs. After this Court's post-argument review of the record, however, it requested that the parties brief an additional issue. Consequently, this Court's review will include Father's original two assignments of error as well as his third assignment of error that was raised through supplemental briefing.

I.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT FAILED TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION.

{¶15} Through his first assignment of error, Father argues that the trial court committed plain error by failing to sua sponte dismiss the complaint. He argues that there were obvious defects in the complaint document itself, insofar as it did not include the name of the child, was signed by a non-attorney, and attached an affidavit that was not properly signed or incorporated by reference. Although Father claims to be challenging the subject matter jurisdiction of the trial court, which can be raised at any time, the substance of this assigned error does not pertain to subject matter jurisdiction. The Summit County Juvenile Court had subject matter jurisdiction over this case because CSB filed a complaint that alleged that S.R. was a neglected and

dependent child. *See* R.C. 2151.23(A)(1); *In re J.G.*, 9th Dist. Wayne No. 12CA0037, 2013-Ohio-417, ¶ 13.

{¶16} Father likewise fails to raise an issue of personal jurisdiction because he does not dispute that he was properly served with the complaint at the address in Vallejo, California, where he continues to reside. Instead, he confines his challenges in this assignment of error to alleged defects in the complaint document itself, which he failed to preserve by raising them in a timely manner.

{¶17} "Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, '* * * the right to hear and determine is perfect[.]" (Citations and internal quotations omitted). *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 12. Any alleged errors pertaining to the manner in which the court proceeds within that case will render the judgment voidable but not void and, therefore, must be raised in a timely manner. *Id.* (Emphasizing that only a lack of subject matter jurisdiction renders a judgment void; "lack of jurisdiction over the particular case merely renders the judgment voidable."). Moreover, Juv.R. 22(D)(2) provides that "[d]efenses or objections based on defects in the complaint (other than failure to show jurisdiction in the court ***)" "must" be raised and heard before the adjudicatory hearing.

{¶18} Despite receiving service of the complaint, Father and Mother failed to timely assert that there were any defects in that document. "Under this procedural framework, appellant had the opportunity to file an answer, to file motions to dismiss based upon the insufficiency of the complaint * * * or to request other relief." *In re Hunt*, 46 Ohio St.2d 378, 381 (1976). Although Father lived in California, he could have raised a timely challenge by mailing a written motion. He did not participate in any of the trial court proceedings in person or through court

filings, however, but instead waited until after his parental rights were terminated to raise this issue. Father cites authority that only supports this Court's conclusion that he could have, and should have, timely raised this issue in the trial court. *See State ex rel. Brooks v. O'Malley*, 117 Ohio St.3d 385, 2008-Ohio-1118, ¶ 1 (noting that the parent could have timely raised similar defects through a timely motion to strike a complaint in the trial court). Father's first assignment of error is overruled accordingly.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED THE PARENTAL RIGHTS OF THE FATHER ALTHOUGH FATHER WAS NEVER PROPERLY SERVED A COPY OF THE PERMANENT CUSTODY MOTION AND SUMMONS.

{¶19} Through his second assignment of error, Father argues that the motion for permanent custody was not properly served on him and, for that reason, the permanent custody decision must be reversed. R.C. 2151.414(A)(1) provides that, upon the filing of a motion for permanent custody, all parties shall be given notice "in accordance with section 2151.29 of the Revised Code[.]" R.C. 2151.29 provides, in relevant part:

Service of summons, notices, and subpoenas, prescribed by section 2151.28 of the Revised Code, shall be made by delivering a copy to the person summoned, notified, or subpoenaed, or by leaving a copy at the person's usual place of residence. *If the juvenile judge is satisfied that such service is impracticable, the juvenile judge may order service by registered or certified mail.* If the person to be served is without the state but the person can be found or the person's address is known, or the person's whereabouts or address can with reasonable diligence be ascertained, service of the summons may be made by delivering a copy to the person personally or mailing a copy to the person by registered or certified mail. (Emphasis added.)

{¶20} Apparently focusing on the first two sentences of this provision, CSB sought and obtained leave of the trial court to serve the complaint on Father in California via certified mail because "it would be impracticable to serve him by personal or residencial service." When it

served the permanent custody motion on Father, CSB again attempted to obtain leave of court to do so via certified mail. On July 30, CSB moved the trial court to grant it leave to serve Father via certified mail at his California address because it would be impracticable to serve him personally or at his residence. That same day, the permanent custody motion was sent to Father via certified mail at his address in Vallejo, California. The record reflects that the certified mail receipt was signed on August 6. The next day, the trial court granted leave to serve the permanent custody motion on Father via certified mail.

{¶21} Father asserts that, although the permanent custody motion was served on him via certified mail at his correct address, because CSB did not first obtain leave of court to serve him via certified mail, service failed to satisfy the requirements of R.C. 2151.29. Although CSB apparently shared Father's belief that leave of court was required to serve the motion via certified mail, both parties apparently ignored the third sentence of R.C. 2151.29, which explicitly applies to the facts of this case: "If the person to be served is without the state but * * * the person's address is known, * * * service of the summons may be made by * * * certified mail." Because Father resided outside the state of Ohio, at an address known by CSB, service via certified mail was permitted without leave of court.

{¶22} When read within the context of the entire paragraph, it is apparent that the first two sentences of R.C. 2151.29 apply to the manner in which service must be made upon someone who is believed to reside within the state of Ohio. The third sentence, which applies to service upon someone who resides outside the state of Ohio, implicitly recognizes that personal or residence service on someone outside the state will often be impracticable. Thus, it omits any requirement that the trial court make a finding to that effect and/or grant leave before service by certified mail is permitted.

{¶23} Father does not dispute that he resided in California, that CSB knew his correct address, or that he was in fact served with the permanent custody motion and summons. The record reflects that service was accomplished at that California address, which Father has continued to identify as his address in this appeal.

{¶24} Father also argues that, even if he received proper service of the permanent custody motion and summons, the records fails to reflect that he received a proper summons because the summons is not properly endorsed by the clerk. *See* Civ.R. 4(A). Father does not dispute that he received the summons, that a signed certified mail receipt is included in the record, or that the copy of the summons in the record includes all of the information required by R.C. 2151.414(A). Instead, his challenge is limited to the manner in which the summons paperwork was completed and filed in the record. Because this alleged error does not affect the jurisdiction of the juvenile court and was not raised in a timely manner, this Court does not reach its merits. Father's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

> THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED THE PARENTAL RIGHTS OF THE FATHER EVEN THOUGH NEITHER HE NOR ANY MEMBERS OF HIS EXTENDED FAMILY WERE EVER GIVEN AN OPPORTUNITY TO REUNITE WITH THE CHILD.

{¶25} Father's final assignment of error is that the trial court committed plain error by terminating his parental rights in violation of his constitutional and statutory rights as the biological father of S.R. because he was not included on the child's case plan and CSB made no effort to reunify S.R. with him or any adult member of his family.

{¶26} Although this Court has not determined whether the civil or criminal plain error standard applies in cases involving the termination of parental rights, *see In re D.S.*, 9th Dist.

Summit No. 24619, 2009-Ohio-3167, ¶ 10, under even the civil standard, Father has demonstrated plain error in this case. The civil plain error standard may be applied only in "the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson,* 79 Ohio St.3d 116 (1997), syllabus. We must agree with Father that, despite his failure to raise a timely objection to his exclusion from the case plan, that error in this case involves the type of exceptional circumstances that require this Court to recognize plain error.

**{¶27}** Specifically, Father was the only man who was alleged to be S.R.'s father and CSB knew his identity and his approximate location at the time it filed the dependency and neglect complaint. The day after it filed the complaint, the intake caseworker learned that, although CSB had listed Father's correct name and street address on the complaint, he actually resided in a different city. Father's address was corrected on the record and he was successfully served with the complaint and all future filings at that same address.

**{¶28}** Moreover, according to the brief testimony of the ongoing caseworker at the permanent custody hearing, Father contacted the intake caseworker a few days after he received the complaint. He informed her that, although his paternity had not been established through DNA testing, he was named on S.R.'s California birth certificate as her father. The caseworker testified about numerous phone conversations with Father over the next several months, during which Father admitted that he was S.R.'s father and expressed an interest in reunification. Nevertheless, the caseworkers continued to inform Father that he was required to submit to genetic testing to establish paternity.

{¶29} Although Father agreed at one point to submit to genetic paternity testing, he later told the caseworker that he could not afford the test. He again insisted that he did not believe that the testing was necessary because the agency had the child's birth certificate, on which he had admitted his paternity. CSB and Father went back and forth disagreeing about the need for Father to submit to DNA testing for a period of at least 16 months. During that lengthy period, Father was never included on S.R.'s case plan and CSB offered no reunification services to him or any members of his family.

{¶30} The caseworker admitted that CSB had a copy of S.R.'s birth certificate, which identified Father as S.R.'s father. Shortly before the permanent custody hearing, the trial court found that Father's paternity had been established by a 2008 California court order.

{¶31} It is unclear from the record why CSB did not accept S.R.'s California birth certificate for purposes of establishing paternity. R.C. 3111.02(B) provides that Ohio courts must afford full faith and credit to paternity established under the laws of another state, including voluntary acknowledgements of paternity. California law recognizes a man as the presumed father of a child if he is identified on the birth certificate because an unmarried father cannot be included on the birth certificate unless he has signed a voluntary acknowledgment of paternity. *See, e.g, In re Raphael P.,* 97 Cal.App.4th 716, 737-738 (2002). Under California law, it would be the burden of a person seeking to disprove Father's paternity to come forward with evidence to rebut the presumption. *Id.*

{¶32} Moreover, Father's paternity was also established by a California court order in 2008. Although the trial court ultimately accepted the California court order as a determination of Father's paternity, it is unclear why CSB did not obtain and approach the trial court with the California court order until shortly before the permanent custody hearing.

**{¶33}** Regardless of the reasons behind CSB's failure to recognize Father's established paternity, it is clear from the record that the agency deprived Father of his constitutional and statutory rights to attempt to be reunified with his child. Throughout the pendency of this case, during which CSB apparently believed that the "12 of 22" clock was ticking against both parents, it did absolutely nothing to involve S.R.'s biological father or members of his extended family in the case planning process, but instead set up unnecessary obstacles to the paternal family's participation in any reunification efforts.

**{¶34}** Appellate counsel for CSB conceded that CSB's failure to include Father on the case plan prior to moving to terminate his parental rights constituted plain error under the facts of this case. We must emphasize that it is the egregious nature of these facts that compels us to recognize plain error in this case. From the beginning of this case, CSB knew Father's identity and location and that he was interested in reunification with his daughter, yet it completely ignored its statutory obligation to attempt to reunify S.R. with her biological family. Because this Court must limit its review to the facts of this case, we do not reach the issue of whether CSB also would have been obligated to include an alleged father in the case plan if his paternity had not been established.

**{¶35}** This Court must once again stress that the authority of the juvenile court and the county children services agency in abuse, dependency, and neglect cases is strictly governed by a comprehensive statutory scheme set forth in R.C. Chapter 2151. *See, e.g.*, *In re I.S.,* 9th Dist. Summit No. 24763, 2009-Ohio-6432, ¶ 10. The specific powers and duties of the county children services agency of relevance here are further set forth R.C. 5153.16 (A)(4), (12), and (18).

{¶36} This Court's interpretation of all relevant statutes and regulations must be guided by the fundamental notion that both parents, including an unmarried and non-custodial father, have a basic civil right to the care and custody of their child. *See Stanley v. Illinois*, 405 U.S. 645, 651 (1972). "'[T]he custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'" *Id.*, quoting *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). "Permanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.' Therefore, parents 'must be afforded every procedural and substantive protection the law allows.'" *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991).

{¶37} Among the procedural protections of the parties is the obligation of the agency to make reasonable efforts to reunify the child with one or both parents. *See* R.C. 2151.419. The "reasonable efforts" requirement of R.C. 2151.419 was first enacted in 1989 and replaced prior statutory provisions that required children services agencies to develop reunification plans between children and parents in all situations. Because it was apparently unclear whether agencies were required to make "reasonable efforts" to reunify parents and children in all circumstances, courts in other appellate districts interpreted R.C. 2151.419 to include an implicit exception to the reasonable efforts requirement if the court determined that such efforts would be "futile." *See, e.g., In re Stevens*, 2d Dist. Montgomery No. 13523, 1993 WL 265130 (July 16, 1993). The implied futility exception was interpreted broadly in some appellate districts, essentially allowing courts to determine the circumstances under which reasonable reunification efforts need not be made. *See, e.g., In re Efaw*, 4th Dist. Athens No. 97CA49, 1998 WL 224905, *4-5 (Apr. 21, 1998).

{¶38} Effective March 18, 1999, H.B. 484 made extensive revisions to R.C. Chapter 2151, including the addition of the "12 of 22" ground for terminating parental rights under R.C. 2151.414. The legislature amended R.C. 2151.419 "to clarify what is meant by reasonable efforts * * * [and] to clarify when reasonable efforts must be made[.]" Through subsection (A)(2), the so-called reasonable efforts bypass provision, the legislature specified the limited circumstances under which reasonable reunification efforts could be excused.

{¶39} R.C. 2151.419(A)(2) now authorizes the trial court to relieve the agency of its obligation to make reasonable reunification efforts if it finds that one of five enumerated circumstances exist, which the legislature has implicitly determined justify a lack of reunification efforts between parent and child. Those limited circumstances are when "the parent from whom the child was removed:" has been convicted of certain violent or dangerous crimes against the child, sibling, or another child living in the home; has repeatedly withheld food or medical treatment from the child without a legitimate excuse; has repeatedly placed the child at risk of harm due to alcohol or drug abuse and has rejected treatment; has abandoned the child; or has had her parental rights to a sibling of the child involuntarily terminated.

{¶40} Absent a judicial finding that one of the circumstances enumerated in R.C. 2151.419(A)(2) exists, a children services agency is obligated to make reasonable reunification efforts and has the burden of demonstrating to the court that it made those efforts. *See* R.C. 2151.419(A). There is nothing in the record to suggest that any of the R.C. 2151.419(A)(2) circumstances pertained to Father, particularly given that S.R. was not removed from his home. Moreover, absent a judicial finding to that effect, CSB was statutorily required to make reasonable efforts to reunify S.R. with Father.

{¶41} In addition to its obligation to make reasonable reunification efforts, CSB was required to file a case plan in this case because it filed a complaint to allege that S.R. was a neglected and dependent child. R.C. 2151.412(A)(1). Case plan requirements are set forth in more detail in administrative regulations developed by the director of job and family services. *See* R.C. 2151.412(C)(1) and (2). The case plan serves as the permanency plan for the child and is required in every case unless the child is deserted, emancipated, both parents' rights have been terminated, or the child is the subject of an interstate compact. Ohio Adm.Code 5101:2-38-05(H) and (I).

{¶42} Pursuant to Ohio Adm.Code 5101:2-38-05(A), CSB was required to prepare a case plan utilizing the Ohio Department of Job and Family Services Form 01410. In preparing the case plan, the agency was required to "attempt to obtain an agreement among all parties," including *both* parents "regarding the content of the case plan." R.C. 2151.412(E); Adm.Code 5101:2-38-05(B).

{¶43} The final page of Job and Family Services Form 10410 requires that each party, including each parent, sign the case plan. If they do not sign, the form requires an explanation about why the party did not sign in agreement or participate in the planning process. Specific examples are included on the form: "Unable to Locate/Unavailable," "Disagreed with Plan" and "Other." An open box is provided for a more detailed explanation "[i]f any party did not sign the case plan or disagreed with the case plan[.]"

{¶44} Father's name is not included on any of the case plans in this case, and no written explanation is given for his failure to sign in agreement or participate in the planning process. There is likewise nothing on the final case plan about the agency's efforts to contact and include

the paternal grandparents or other adult members of Father's family. *See* Ohio Adm.Code 5101:2-39-01(P); JFS 10410, Section 7.

**{¶45}** The agency's unexplained exclusion of Father and his extended family from all reunification and/or case planning efforts in this case completely undermined the integrity and legitimacy of these trial court proceedings and violated the statutory and constitutional rights of both Father and S.R. "[T]he overriding purpose of the case plan is for the agency to help the family remedy its problems and return the child to her 'home' or, if that is not possible, to find a suitable caregiver who is part of her extended family." *In re A.P.*, 9th Dist. Medina No. 12CA0022-M, 2012-Ohio-3873, ¶ 27, citing R.C. 2151.412(G), (H), and (J). The agency's powers and duties extend to parents and other family members who reside outside the state of Ohio and to parents who did not have custody of the child at the commencement of the case. *See* R.C. 5153.16(A)(12); Ohio Adm.Code 5101:2-40-02(B), (G), and (K); Ohio Adm.Code 5101:2-37-04(A) and (D).

**{¶46}** The trial court ultimately terminated Father's parental rights under the so-called "12 of 22" provision of R.C. 2151.414(B)(1)(d). In other words, the first prong of the permanent custody test was satisfied, and the agency essentially established parental unfitness, simply by the passage of time. *See In re K.G.*, 9th Dist. Wayne Nos. 03CA0066, 03CA0067, and 03CA0068, 2004-Ohio-1421, ¶ 21. In this case, however, that passage of time could not imply parental unfitness because Father was given no reasonable opportunity to demonstrate his ability to parent S.R. A presumption of parental unfitness based on the passage of "12 of 22" months arises only if and when a parent has been given a reasonable opportunity to demonstrate that he is suitable to parent his child but fails to do so. *See id.*

{¶47} The trial court had no authority to make a "12 of 22" finding under the facts of this case because Father was not provided with *any* reasonable reunification efforts. R.C. 2151.413(D)(3)(b) explicitly provides that an agency "shall not file a motion for permanent custody" on 12 of 22 grounds if reasonable reunification efforts are required under R.C. 2151.419 and the agency has not provided those services to the child or parent.

{¶48} Moreover, in *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, the Ohio Supreme Court followed some of this Court's reasoning in *In re K.G.*, including that a children services agency lacks authority to move for permanent custody on the "12 of 22" ground until the child has been in agency custody for at least a full 12 months. *Id.* at syllabus. The court's reasoning behind that holding was that "in light of the purpose of R.C. Chapter 2151 and a court's obligation to provide parents with procedural protections in permanent custody proceedings, an agency must afford parents the full 12-month period to work toward reunification before moving for permanent custody" because "[t]he statute clearly provides parents with 12 months to demonstrate their ability and fitness to care for their child before an agency can move for permanent custody on R.C. 2151.414(B)(1)(d) grounds." *Id.* at ¶ 23, 25.

{¶49} Because Father was not included on the case plan and was afforded no services whatsoever in attempting to be reunified with S.R., the trial court committed plain error in terminating his parental rights under the "12 of 22" provision of R.C. 2151.414(B)(1)(d). Father's third assignment of error is sustained.

III.

{¶50} Father's first two assignments of error are overruled. His third assignment of error is sustained. The judgment of the Summit County Court of Common Pleas, Juvenile

Division, is reversed and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

GALLAGHER, J.
CONCURS.

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY.

(Gallagher, J., of the Eighth District Court of Appeals, sitting by assignment.)

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

TONY PAXTON, Attorney at Law, for Appellee.

LINDA BENNETT, Guardian ad Litem.