[Cite as *In re H.S.*, 2018-Ohio-3360.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: H.S.
      Z.M.
      I.M.
      P.S.

C.A. Nos.     28944
               28948

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   DN 15-09-611
             DN 15-09-612
             DN 15-09-613
             DN 16-11-955

DECISION AND JOURNAL ENTRY

Dated: August 22, 2018

CARR, Presiding Judge.

{¶1} Appellants, D.S. ("Mother") and J.M. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court reverses and remands.

I.

{¶2} Mother is the biological mother of H.S., born March 11, 2010; Z.M., born October 22, 2013; I.M., born April 28, 2015; and P.S., who was born during the pendency of this case on November 3, 2016. Father is the father of the three youngest children. The father of H.S. did not appeal from the trial court's judgment.

{¶3}  On September 10, 2015, CSB filed complaints to allege that the three older children were dependent because their home was unsafe and unsanitary and their parents were not appropriately supervising them or meeting their basic daily needs.  Father had also threatened to flee the state with the children.  On December 3, 2015, the children were adjudicated dependent and were later placed in the temporary custody of CSB.

{¶4}  The initial case plan in this case focused on the parents obtaining safe and stable housing, demonstrating that they could meet the children's needs, and obtaining mental health assessments and following any treatment recommendations.  During March 2016, CSB filed a written brief in opposition to the parents' request to expand visitation because it was concerned that they exhibited signs of below average intelligence and had difficulty interacting with the children.  CSB informed the trial court about its "plans to file a proposed case plan" to add parenting classes for the parents because they had been having difficulty visiting the children "in a structured environment."  The agency did not amend the case plan to add parenting classes for several more months, however.

{¶5}  On June 8, 2016, a magistrate ordered that, at a minimum, the parents "shall have five hours of supervised visitation each week" at the agency interaction center and that they "shall have additional parenting time through the Incredible Years program or similar parenting class which incorporates the children."  On August 12, 2016, CSB formally amended the case plan to add a parenting component for both parents.

{¶6}  On August 16, 2016, CSB filed its first motion for permanent custody of the three older children, alleging that they could not be returned to the parents' custody or should not be returned to their care for several alternative reasons under R.C. 2151.414(E), including that the parents had failed to remedy the conditions that had caused the children to remain placed outside

the home. *See* R.C. 2151.414(E)(1). Following a hearing, the trial court denied CSB's first motion for permanent custody and extended temporary custody for another six months. It reasoned that "there has been some compliance with the case plan to justify an extension[]" and that "[b]ecause of a clerical error," the parents had not been referred to intensive parenting classes until February 2017, after the commencement of the permanent custody hearing. Consequently, on May 8, 2017, the trial court ordered that the parents "be given the opportunity to follow through with parenting through Fast Track." The trial court emphasized that, for the parents to fully engage in Fast Track services, the sessions must be held with the children present "as is typically done in this program."

{¶7} As the case moved forward, the parents consistently visited their children, always arrived on time, and the children were always excited to see them. Although the parents engaged in services through the Fast Track program, they were not provided with parenting classes that incorporated the children because their instructor was not available to come to their visits. Despite the May 2017 order that CSB provide the parents with parenting education that incorporated the children, the parents never received those reunification services.

{¶8} During November 2016, P.S. was removed from the custody of her parents shortly after her birth. The juvenile court adjudicated the child dependent on December 20, 2016, and later placed the child in the temporary custody of CSB.

{¶9} On July 20, 2017, CSB moved for permanent custody of all four children. It alleged numerous grounds for permanent custody under R.C. 2151.414(E) and that the older children had been in its temporary custody for at least 12 months of a 22-month period. It did not allege the "12 of 22" ground as to P.S., who had been in its temporary custody for only seven months at that time. *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, syllabus, ¶ 28

(affirming this Court's decision that the "12 of 22" ground must exist at the time the agency moves for permanent custody).

{¶10} A three-day hearing was held during December 2017 before a visiting judge, who is not the judge who presided over the first permanent custody hearing. Following the hearing, the visiting judge determined that all four children had been in the temporary custody of CSB for at least 12 of 22 months and that permanent custody was in their best interest.

{¶11} Mother and Father separately appealed and their appeals were later consolidated. Mother raises three assignments of error. Father joins in two of Mother's assigned errors and raises two other assignments of error. After an initial review of the record, this Court asked the parties to brief an additional issue. Specifically, this Court questioned whether the parents received reasonable reunification efforts, as set forth in the case plan and orders of the trial court, pertaining to their cognitive delays and their need for hands-on intensive parenting education.

{¶12} The parties have also raised an obvious error in the trial court's "12 of 22" finding as to P.S. because the child had not been in CSB's temporary custody for 12 months when CSB moved for permanent custody and CSB did not allege that ground in its motion. Because the supplemental issue raises a reversible error in the proceedings that pertains to all four children, however, this Court will confine its review to the parents' supplemental assignments of error, which will be addressed jointly.

II.

**MOTHER'S SUPPLEMENTAL ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN GRANTING PERMANENT CUSTODY WHEN [CSB] FAILED TO PROVIDE REASONABLE REUNIFICATION EFFORTS UNDER R.C. 2151.413(D)(3)(B).

**FATHER'S SUPPLEMENTAL ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED THE PARENTS' RIGHTS AND PLACED THE CHILDREN IN THE PERMANENT CUSTODY OF CSB WHEN THE AGENCY DID NOT COMPLY WITH COURT ORDERS AND PROVIDE REASONABLE REUNIFICATION EFFORTS.

**{¶13}** The supplemental assignments of error focus on whether CSB provided reasonable reunification services as required by the case plan and other specific court orders; and, if not, whether the trial court had statutory authority to terminate parental rights in this case.

**Reasonable Reunification Efforts**

**{¶14}** "'[T]he authority of the juvenile court and the county children services agency in abuse, dependency, and neglect cases is strictly governed by a comprehensive statutory scheme set forth in R.C. Chapter 2151." *In re S.R.*, 9th Dist. Summit No. 27209, 2014-Ohio-2749, ¶ 35, citing *In re I.S.*, 9th Dist. Summit No. 24763, 2009-Ohio-6432, ¶ 10. Because termination of parental rights has been described as "the family law equivalent of the death penalty[,]" the parents "'must be afforded every procedural and substantive protection the law allows.'" *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991). Among those procedural protections "is the obligation of the agency to make reasonable efforts to reunify the child[ren] with one or both parents." *In re S.R.*, at ¶ 37, citing R.C. 2151.419.

**{¶15}** R.C. 2151.413(D)(3)(b) explicitly provides that an agency shall not file for permanent custody based on "12 of 22" if it was required to make reasonable reunification efforts under R.C. 2151.419 and "has not provided the services required by the case plan to the parents of the child or the child to ensure the safe return of the child to the child's home." Regarding other grounds for permanent custody, the agency is usually required to make

reasonable reunification efforts prior to seeking permanent custody. *See generally In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104; *In re S.R.*, 2014-Ohio-2749.

{¶16} In *In re C.F.*, at ¶ 43, the Ohio Supreme Court held that R.C. 2151.419 does not explicitly require a trial court to make a reasonable efforts finding at the permanent custody hearing. Nevertheless, the Court emphasized that its holding "does not mean that the agency is relieved of the duty to make reasonable efforts [prior to seeking permanent custody]." *Id.* at ¶ 42. In fact, it emphasized that "except for some narrowly defined statutory exceptions, the state must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights." *Id.* at ¶ 43. Furthermore, "[i]f the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.*

{¶17} A trial court is authorized to relieve an agency of its statutory obligation to make reasonable reunification efforts only if it finds that one of five enumerated circumstances exist. *In re S.R.*, 2014-Ohio-2749, at ¶ 39. "Those limited circumstances are when 'the parent from whom the child was removed:' has been convicted of certain violent or dangerous crimes against the child, sibling, or another child living in the home; has repeatedly withheld food or medical treatment from the child without a legitimate excuse; has repeatedly placed the child at risk of harm due to alcohol or drug abuse and has rejected treatment; has abandoned the child; or has had her parental rights to a sibling of the child involuntarily terminated." *Id.* None of those circumstances existed in this case, so the trial court did not relieve CSB of its statutory obligation make reasonable reunification efforts before seeking a termination of parental rights.

{¶18} The pivotal dispute in this appeal is whether CSB fulfilled its statutory obligation to make reasonable efforts to reunify these parents with their children. R.C. Chapter 2151 does

not define the term reasonable efforts, but that term has been construed by the Ohio Supreme Court to mean "[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed[.]" *In re C.F.*, 2007-Ohio-1104, at ¶ 28, quoting Will L. Crossley, Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation, 12 B.U.Pub.Int.L.J. 259, 260 (2003). "Because case plans are tools that child protective service agencies use to facilitate family reunification, the plan and the agency's efforts should account for the respective abilities of the parents and children in pursuing individualized concerns, goals, and steps necessary for reunification." *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 10.

{¶19} In this case, the primary problem undermining both parents' ability to provide a suitable home for their children was their limited cognitive abilities. As early as March 2016, CSB had expressed concern on the record about those limitations and their effect on the parents' ability to care for their children. Given that the primary obstacle to their parenting ability appeared to be their limited cognitive abilities, "reasonable" reunification efforts should have focused on those limitations. Reasonable efforts to address the parenting problems of cognitively-delayed parents will typically involve some sort of hands-on parenting education program that enables the parents to role-model appropriate parenting behavior. *See, e.g.*, *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio- 5885, ¶ 11.

{¶20} The agency and the trial court had expressed concern for many months that the parents needed intensive parenting instruction, but the record fails to reveal that the agency made reasonable efforts to provide the parents with those reunification services. It was not until August 2016, nearly one year after the older children were removed from the home, that the case

plan was amended to include a parenting education component that would target the developmental disabilities of these parents.

{¶21} Despite that August 2016 case plan amendment, the trial court implicitly found in its May 2017 order denying the first motion for permanent custody that CSB had not made reasonable reunification efforts in that regard because the parents had not yet received hands-on parenting instruction. Consequently, the trial court explicitly ordered that the parents "must be given the opportunity" to engage in a program of intensive one-on-one parenting education with their children "as is typically done in [the Fast Track] program."

{¶22} At the second permanent custody hearing held seven months later, the evidence was undisputed that the parents were never provided with parenting classes that incorporated the children. A CSB caseworker testified that she connected these parents with the Fast Track program because it typically provides parenting instruction to parents and their children either in the family home or at the interaction center. She specifically requested a parenting instructor who would come to the interaction center and provide the parents with hands-on training during their visits with the children. The caseworker requested a particular instructor with whom she had worked in the past, but that person was not available.

{¶23} Instead, the instructor assigned by Fast Track did not work with the parents and children because she had a scheduling conflict and was not available at the time the parents visited with the children. The instructor interned at Fast Track for one year while she continued working to obtain her license as a family and marriage therapist. Although she came to one visit between the parents and the children, her participation at the visit was merely to observe the parents' interaction with the children. She then met with the parents alone in their home and tended to focus more on their marital problems than on parenting education. In fact, she referred

to their sessions as "therapy" rather than parenting education. She conceded on cross-examination that, ideally, she would have worked with the parents and their children together but she had not done so.

{¶24} The evidence in the record is not disputed that the only reason offered for the agency's failure to provide hands-on intensive parenting classes was that Fast Track assigned an instructor who was not able to attend the parents' visits. She testified that she had no concerns about working with the parents and their children at the interaction center, but her schedule prevented her from being available at that time. CSB made no effort to resolve the scheduling conflict by adjusting the parents' visitation schedule or requesting a different instructor from Fast Track. This Court can only conclude that CSB failed to provide reasonable, court-ordered reunification services in this case. Given the lack of reasonable reunification efforts in this case, the trial court lacked authority to terminate parental rights. The supplemental assignments of error are sustained.

## REMAINING ASSIGNMENTS OF ERROR

{¶25} Given this Court's disposition of the parents' supplemental assignments of error, their remaining assignments of error have been rendered moot and will not be addressed. *See* App.R. 12(A)(1)(c).

## III.

{¶26} The parents' supplemental assignments of error are sustained. Their remaining assignments of error are not addressed because they have been rendered moot. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

CALLAHAN, J.
CONCURS.

CANNON, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶27} I respectfully concur with the opinion of the majority except in one respect. In Mother's second assignment of error, in which Father joins, she alleges CSB did not have custody of *any* of the children for a period of at least 12 months of a 22-month period at the time the motion for permanent custody was filed.

{¶28} The three older children had actually been in the temporary custody of CSB, pursuant to Ohio law, for only eleven months when the motion for permanent custody was filed: nine months from November 2015 (60 days after they were removed from the home) until August 2016 (when the first motion for permanent custody was filed), and two months from May 2017 (when the trial court denied the first motion) and July 2017 (when the second motion for permanent custody was filed). *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, ¶ 26 ("the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)"); *see also In re E.T.*, 9th Dist. Summit No. 22720, 2005-Ohio-6087, ¶ 10 ("permanent custody is measured to the time when the motion for permanent custody is filed").

{¶29} This assignment of error has merit, and, because it is outcome determinative, I would not find it moot.

(Cannon, J., of the Eleventh District Court of Appeals, sitting by assignment.)


APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

NEIL AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.