[Cite as *In re K.J.*, 2021-Ohio-4413.]

STATE OF OHIO       )
                    )ss:
COUNTY OF SUMMIT    )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN RE: K.J.

C.A. No.     29915

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 19 09 0771

DECISION AND JOURNAL ENTRY

Dated: December 15, 2021

CARR, Judge.

{¶1} Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted legal custody of his child to the child's maternal grandparents ("Grandfather" and "Grandmother"; collectively "Grandparents"). This Court reverses and remands.

I.

{¶2} Mother and Father are the biological parents of K.J. (d.o.b. 9/9/19), although the child's paternity had not been established at the time of her birth. A week after K.J. was born, Summit County Children Services Board ("CSB" or "the agency") filed a complaint alleging that the child was abused (endangered), neglected, and dependent; and requesting protective supervision. The agency alleged that Mother used various illegal drugs during her pregnancy, that she had untreated mental health issues, and that she had a prior child welfare agency history which resulted in her three older children being placed in the legal custody of relatives. At the

shelter care hearing, both Mother and the then-alleged father waived their hearing rights and stipulated that K.J. would remain in Mother's legal custody under the protective supervision of CSB. Mother and the child were subject to an in-home safety plan whereby Mother would care for K.J. while residing with Grandparents.

{¶3} After CSB withdrew its allegation of neglect, K.J. was adjudicated an abused and dependent child. Following a dispositional hearing, the child remained in Mother's legal custody under the agency's protective supervision. Mother was ordered to continue to abide by the terms of the safety plan. The juvenile court adopted CSB's case plan as an order. The case plan only included objectives for Mother. Specifically, Mother was required to obtain chemical dependency and mental health assessments and follow all recommendations, and to complete the housing referral process to obtain safe and stable housing.

{¶4} Father submitted to genetic testing in November 2019, and the DNA test report determining his paternity of K.J. was filed on December 30, 2019. On January 8, 2020, CSB filed a motion to establish a parent/child relationship between Father and K.J. based on that report. The juvenile court granted the agency's motion the next day. CSB did not amend the case plan to add Father or any objectives relating to him at that time.

{¶5} Over the next couple of months, the guardian ad litem and CSB filed notices informing the juvenile court that Mother was not complying with the terms of the safety plan, and that she had in fact left Grandparents' home with the child for an unknown location. Despite subsequent court-ordered updates by the guardian ad litem and the agency that Mother's and the child's whereabouts were unknown and that Mother was not attending her substance abuse recovery group, the magistrate maintained K.J. in Mother's legal custody under an order of protective supervision. Thereafter, CSB filed a motion to change disposition from protective

supervision to emergency temporary custody and temporary custody. Although the agency had located Mother and the child, the agency alleged that Mother was not participating in mental health or drug treatment services, that she had recently tested positive for fentanyl use, and that Mother and the child were staying in an inappropriate home.

{¶6} After a shelter care hearing, the juvenile court concluded that K.J. could not safely be returned home to Mother. The court granted temporary custody of the child to CSB, which placed her in Grandparents' home.

{¶7} On June 23, 2020, five and a half months after the judicial determination of paternity, and six and a half months after the agency had notice that genetic testing proved that Father was the biological father of K.J., CSB filed an amended case plan based on a "change in custody status" of the child, as she was now in the agency's temporary custody. Under "PARTIES TO THE PLAN," the agency listed only the child and Mother. The case plan maintained the original three objectives for Mother, but for the first time added a case plan objective for Father. Specifically, Father was required to

> reach out to the worker/agency to schedule a home visit, complete an updated background check on him and all adults who live with him, and follow up with any concerns the agency has once this is completed. If any concerns are identified, the worker will reflect them in an updated case plan as well as make the needed referrals.

{¶8} The amended case plan addressed visitation for Mother, requiring supervision in Grandparents' home based on Mother's fentanyl use and failure to engage in treatment. There was no provision for visitation for Father, even in a supervised setting in a more restricted location such as the agency's visitation center. Finally, CSB did not add Father as one of the "Parent" "Plan Participants" with whom it attempted to jointly develop the case plan, instead merely adding Father as one of the "Associated Plan Participants," a category that included the

caseworker, her supervisor, and the guardian ad litem. The juvenile court adopted the amended case plan as the order of the court on July 7, 2020.

{¶9} On August 7, 2020, CSB filed a motion for legal custody to Grandparents. In support, the agency alleged that Grandparents were providing a safe and stable environment for K.J., and that Mother had not significantly complied with her case plan objectives. As to Father, CSB alleged that he "is not actively engaged in his case plan. He is unemployed and does not have independent housing." Moreover, the agency alleged that "Father's visits have been sporadic."

{¶10} One month later, the magistrate held a sunset dispositional hearing. Father orally moved for a first six-month extension of temporary custody to allow him additional time to work on his case plan objective, as he had only been added to the case plan two months earlier. Initially, all parties appeared to agree that a six-month extension was warranted, and that the case might also be suitable for mediation. After discussions off the record, however, the assistant prosecutor informed the court that the caseworker reported that CSB would oppose a six-month extension of temporary custody. Asserting that "even though [Father] wasn't technically put on the case plan until June, he was a party [to the case] from the very beginning" and had "every opportunity to voice his desire to * * * be put on a case plan. And he just hasn't really taken the initiative throughout the entire case." The assistant prosecutor then argued that "[Father's] only objectives were really to provide for the needs for the child, mainly housing and income, and he hasn't really been able to even provide that or do that."

{¶11} It is unclear how "housing and income" became Father's case plan objectives, as CSB never again amended the case plan to add these specific objectives for Father. Nevertheless, Father did not argue that the agency had not identified those issues as specific

concerns for him to address. Instead, Father's attorney argued that it was the duty of CSB, not Father, to add Father to the case plan. Because the agency had failed to add case plan objectives for Father to allow him a reasonable time to address any concerns, his attorney argued that CSB had failed to use reasonable efforts to facilitate reunification. Moreover, Father's attorney argued that, despite the limited time for engagement in case plan objectives, Father had obtained full time employment and would be able to obtain safe and stable housing within the period of a six-month extension of temporary custody.

{¶12} The matter proceeded to an evidentiary hearing, during which the evidence demonstrated that Father had secured full time employment two weeks earlier and that he believed he could find housing shortly. The magistrate issued a decision denying Father's request for a first six-month extension and granting CSB's motion for legal custody to Grandparents. Father filed timely objections. No party responded in opposition.

{¶13} Upon consideration, the juvenile court overruled Father's objections. It denied Father's motion for a first six-month extension of temporary custody upon finding that Father had not made significant progress on his case plan objectives to support a reasonable belief that reunification could occur within six months. *See* R.C. 2151.415(D)(1). Although the trial court acknowledged that "[i]t took far too long for Father to be added to the case plan," it found that Father had not met the statutory standard for an extension of temporary custody. The juvenile court based its finding in part on Father's visiting with the child in person only twice, while acknowledging a "global pandemic[,]" the agency's official sanctioning of visits only as of July 30, 2020, and Father's near-daily telephone/FaceTime calls to the child and her caregivers.

{¶14} The juvenile court granted CSB's motion for legal custody to Grandparents. Father has timely appealed and now raises three assignments of error for review. As all three

assignments of error address an issue that is dispositive and requires reversal, this Court consolidates the assignments of error to facilitate discussion.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PLACED THE CHILD IN THE LEGAL CUSTODY OF RELATIVES WHEN THE AGENCY DID NOT PROVIDE [FATHER] WITH REASONABLE REUNIFICATION EFFORTS.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT IT WAS IN K.J.'S BEST INTERESTS TO BE PLACED IN THE LEGAL CUSTODY OF RELATIVES.  THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED AND ABUSE OF DISCRETION IN FAILING TO GRANT A SIX-MONTH EXTENSION.

{¶15}  Although some assignments of error address additional issues, Father argues in each that CSB failed to use reasonable efforts to reunify K.J. with him when the agency failed to add Father to the case plan in a timely manner to allow him a reasonable time to comply with his case plan objectives before the juvenile court heard the agency's motion for legal custody of the child to Grandparents.  This Court agrees.

{¶16}  This Court has repeatedly stated that the juvenile court's sole authority in dependency, neglect, and abuse cases derives from the comprehensive statutory scheme set out in R.C. Chapter 2151.  *E.g., In re A.P.*,  9th Dist. Medina No. 12CA0022-M, 2012-Ohio-3873, ¶ 16.  R.C. 2151.412, which addresses case plans, further directs the director of job and family services to adopt rules regarding the content, format, development, implementation, and

modification of case plans. Those rules are found in various provisions of the Ohio Administrative Code.

{¶17} R.C. 2151.412(A) requires the agency to "prepare and maintain a case plan for any child to whom the agency is providing services" under certain circumstances, including when the child is at home under the agency's protective supervision and when the agency has temporary custody of the child. Ohio Adm.Code 5101:2-38-05(E) identifies who is a party to the case plan. In addition to the child, child's attorney (if applicable), and guardian ad litem, the list includes the child's "parent, guardian or custodian." *Id.* at (E)(1), (3), (4), (5), and (7). As paternity was established for K.J., CSB was required to add Father to the case plan.

{¶18} The law imbues parents with the substantial right to raise their children and concomitantly entitles them to all legally permissible procedural and substantive protections. *In re C.S.*, 9th Dist. Summit Nos. 29927, 29929, and 29938, 2021-Ohio-3182, ¶ 25. These include the child welfare agency's obligation to make reasonable efforts to reunify children with one or both parents. *Id*. The case plan is the tool used by the agency to facilitate family reunification efforts. *In re H.S.*, 9th Dist. Summit Nos. 28944 and 28948, 2018-Ohio-3360, ¶ 18. In fact, the overriding purpose of the case plan is to allow the agency to assist the parents in remedying the conditions underlying a child's removal so that the child can be returned safely to one or both parents' custody. *In re S.R.*, 9th Dist. Summit No. 27209, 2014-Ohio-2749, ¶ 45.

{¶19} Due process requires that a parent be accorded a reasonable time in which to work to comply with case plan objectives and cure parenting defects which impede the safe return of a child to the parent's care. *See In re M.P.*, 9th Dist. Lorain No. 14CA010678, 2015-Ohio-2226, ¶ 30 ("[I]t is fundamental that parents must be afforded a reasonable amount of time to accomplish their [case plan] goals."). An initial temporary custody order remains in effect for a full year

from the earlier of the date of the filing of the complaint or the child's placement in shelter care. R.C. 2151.353(G). In addition, R.C. 2151.415(D) authorizes the juvenile court to extend an order of temporary custody twice. A first six-month extension of temporary custody is warranted upon proof, by clear and convincing evidence, "that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents * * * within the period of extension." R.C. 2151.415(D)(1).

{¶20} In this case, CSB was aware when it filed its complaint that Father was the child's alleged father, although paternity had not yet been established. Nevertheless, while the agency has done so in other cases reviewed by this Court, CSB did not include an objective in the original case plan for any alleged father interested in pursuing visitation or custody to establish paternity. While such an objective might be prudent for purposes of case management, this Court acknowledges that there is no statutory mandate for the agency to create case plan objectives for alleged fathers.

{¶21} Father, however, submitted to genetic testing through Summit County Child Support Enforcement Agency two months into the case, on November 20, 2019. The child's swab was collected six days later. On December 30, 2019, a DNA test report indicating a greater than 99.99% probability that Father was the child's biological father was filed in the juvenile record. A week later, the agency moved for an order establishing a parent-child relationship between Father and K.J. The juvenile court granted that order on January 9, 2020. Five and a half months elapsed, however, before CSB filed an amended case plan that for the first time included a case plan objective for Father. The juvenile court adopted the amended case plan as

an order on July 7, 2020. On July 16, 2020, the juvenile court issued its first order granting Father visitation with the child in the discretion of both the agency and guardian ad litem.

{¶22} A mere month after the agency filed its amended case plan, and only a couple of weeks after it first arranged for Father to have visitation with the child, CSB filed a motion for legal custody to the maternal grandparents. In support, the agency alleged that Father was not actively engaging in his case plan objectives, as he was unemployed and did not have independent housing. In addition, CSB alleged that Father's visits with the child had been sporadic.

{¶23} At the final dispositional hearing held one month after CSB filed its motion, the evidence demonstrated that Father had obtained fulltime employment and was saving money to obtain housing. Nevertheless, the juvenile court denied Father's motion for a six-month extension of temporary custody after finding that Father had not made sufficient progress on his case plan objectives to satisfy the statutory requirement of R.C. 2151.415(D)(1). The juvenile court acknowledged that, while Father had made some progress, he had only begun complying with his case plan objectives "just prior to the hearing[.]" Specifically, the trial court found that Father had obtained fulltime employment approximately two weeks before the dispositional hearing.

{¶24} The juvenile court failed to acknowledge that Father had achieved one of the two objectives the parties agree that Father had, and that he had done so within six weeks of the court's adoption of those objectives as an order. The trial court found a lack of significant case plan progress because Father had not met his second objective to obtain housing. The agency caseworker testified, however, that apartments in the area cost between $500 and $1000 per month, that a renter typically needs to pay a deposit along with the first and last months' rent at

the beginning of the lease, and that she did not know how much money Father had been able to save since he began his fulltime job two weeks earlier. Moreover, the caseworker testified that she did not give Father any housing referrals because he had not asked for any. Perhaps most significantly, the caseworker acknowledged that she had not had any contact with Father during the past two months, i.e., since the juvenile court adopted the amended case plan and the agency filed its motion for legal custody, because she had been on leave.

{¶25} The attorney guardian ad litem for the child testified that, while she believed the agency had used reasonable efforts, she also believed that Father should have been added to the case plan earlier. The agency caseworker admitted at the hearing that "in all honesty I probably should have [added Father to the case plan], once he was determined to be the father, maybe back in January, but unfortunately I was unable to engage with him on a consistent basis." The caseworker did not explain why she could not have simply added objectives for Father to demonstrate that he was able to meet the basic needs of the child and that he would contact the caseworker to determine the need for specific services. Instead of using reasonable efforts to facilitate reunification with Father, CSB shifted the burden to Father to take the initiative to request case plan objectives.

{¶26} The assistant prosecutor endorsed the improper burden shifting when acknowledging during opening statements that, while Father "wasn't technically put on the case plan until June [2020], he was a party from the very beginning" and had "every opportunity" to request being added to the case plan. R.C. 2151.412(A), however, clearly places the burden on the agency to create a case plan including all necessary parties. CSB failed to comply with its statutory burden in this case in a timely manner as to Father.

**{¶27}** By the date of the dispositional hearing, Father had been subject to a court-ordered case plan objective for only two months. That objective required him to contact the caseworker to schedule a home visit, complete an updated background check, and follow up with any agency concerns. Presumably because the parties agree that Father was only required to obtain employment and independent housing, those were the sole concerns identified by the agency. This Court makes no determination here whether Father's compliance with one of his requirements, i.e., obtaining fulltime employment, constitutes "significant progress" for purposes of granting a six-month extension of temporary custody. However, we conclude that the agency failed to use reasonable efforts to facilitate reunification of the child with Father when it delayed adding Father to the case plan for five and a half months after paternity was established. This delay provided Father a mere two months to comply with his case plan objectives. As a result, he was deprived of a reasonable amount of time to accomplish his objectives and work towards reunification. *See In re M.P.*, 2015-Ohio-2226, at ¶ 30. Father's assignments of error are sustained.

### III.

**{¶28}** Father's assignments of error are sustained. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

ANGELINA GINGO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

BRENDON KOHRS, Attorney at Law, for Appellee.

AMBER CROWE, Guardian ad Litem.