[Cite as *In re E.C.*, 2022-Ohio-1223.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: E.C.
      B.C.

C.A. Nos.    30096
                30097

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 20 11 0709
                DN 20 11 0710

DECISION AND JOURNAL ENTRY

Dated: April 13, 2022

CALLAHAN, Judge.

**{¶1}** Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted Father's motion for legal custody of the parents' children. This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of E.C., born December 21, 2011; and B.C., born December 5, 2013. Prior to this case, the parents were legal custodians of the children pursuant to a shared parenting plan issued by the domestic relations court. Based on his concerns regarding the environment in Mother's home, Father petitioned the domestic relations court for sole legal custody of the children. When the family court could not schedule a hearing on Father's petition for several months, Father contacted Summit County Children Services Board ("CSB" or "the agency") regarding his concerns for the children's wellbeing.

**{¶3}** CSB contacted Mother who admitted to methamphetamine use and incidents of domestic violence in the home between Mother and her live-in boyfriend. After discussions with the agency intake caseworker, Mother agreed to the implementation of an out-of-home safety plan, whereby the children would reside with Father, and Mother would have supervised visits. Erratic behaviors by Mother in the meantime, however, compelled CSB to file a complaint in which it alleged that E.C. and B.C. were abused and dependent children. CSB requested an emergency order of temporary custody to Father under the agency's protective supervision in its complaint.

**{¶4}** At the shelter care hearing, both parents waived their hearing rights and stipulated to findings of probable cause for removal of the children from Mother's home and reasonable efforts by the agency. The children were ordered to remain in Father's emergency temporary custody under CSB's protective supervision. Mother was allowed to have supervised visits with the children.

**{¶5}** The agency filed its proposed case plan. The goal was reunification with a parent, guardian, or custodian. The case plan contained mental health and drug abuse objectives for Mother. Because CSB had no concerns regarding Father's parenting abilities, the agency created no objectives for Father.

**{¶6}** At the adjudicatory hearing, both Mother and Father waived their rights to a hearing and stipulated to the facts alleged in the complaint, as amended to delete allegations of abuse. Based on the parties' stipulations, the juvenile court adjudicated E.C. and B.C. to be dependent children. The trial court also ordered Mother to complete a drug and alcohol assessment within 30 days, meet with the juvenile court's drug court staff, and attend a drug court status hearing within 14 days.

{¶7} Father filed a motion to change disposition from emergency temporary custody with protective supervision to legal custody. The guardian ad litem filed a report in which he recommended legal custody to Father. At the dispositional hearing, the assistant prosecutor informed the court that, while the agency was seeking temporary custody to Father under CSB's protective supervision; the agency did not oppose an award of legal custody to Father. Mother supported the agency's request for temporary custody to Father.

{¶8} After considering the evidence presented at the dispositional hearing, the magistrate awarded legal custody to Father and closed the case. Mother filed timely objections, and CSB responded in opposition. The juvenile court overruled Mother's objections, granted Father's motion for legal custody, terminated the agency's protective supervision, awarded Mother weekly supervised visitation, and closed the case. Mother filed a timely appeal and secured a stay of the judgment pending appeal. Mother raises one assignment of error for consideration.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT[] ABUSED ITS DISCRETION AND WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT GRANTED FATHER'S MOTION FOR LEGAL CUSTODY WITHOUT GRANTING MOTHER A [MEANINGFUL] TIME FRAME TO COMPLETE CASE PLAN SERVICES.

{¶9} Mother argues that the juvenile court's judgment awarding legal custody of the children to Father was against the manifest weight of the evidence. This Court disagrees.

{¶10} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment]

must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

> On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

{¶11} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. *See also In re M.R.L.*, 9th Dist. Summit No. 25618, 2011-Ohio-4997, ¶ 9 (recognizing the juvenile court's jurisdiction pursuant to R.C. Chapter 2151 to determine custody of a child adjudicated dependent, neglected, or abused notwithstanding a prior shared parenting order issued by the domestic relations court). The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C.

2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); see also *In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16. In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶12} Prior to this case, the children spent a significant amount of time in Father's care. Although the parents' shared parenting plan provided that the children would spend half of every week with each parent, Father testified that Mother often requested that the children stay with Father during times allotted to Mother. The children have a strong bond with each other and with Father. Although they love Mother and want to visit with her, the children informed the guardian ad litem that they want to continue to live with Father.

{¶13} Father provides a safe and stable home for the children. The children have their own bedrooms, and all their basic needs are met in Father's home. The guardian ad litem reported that the children are happy and feel secure in Father's home.

{¶14} Father recognizes the importance of allowing the children to maintain a relationship with Mother, and he has facilitated thrice weekly supervised visitation for Mother and the children, more than required by the agency's visitation plan. He testified that he will continue to promote the children's interaction with Mother if he is the sole legal custodian. At the same time, Father is committed to protecting the children from harmful influences, and he has terminated visits when Mother appeared high on drugs or behaved erratically.

{¶15} Both the caseworker and guardian ad litem testified that they have no concerns regarding Father's care of the children. Father has readily granted the caseworker and guardian ad litem access to the children and his home. The guardian ad litem opined that it is in the children's best interest to be placed in Father's legal custody. The caseworker clarified that CSB is not opposed to an award of legal custody to Father because Father (1) is able to meet the children's basic needs, (2) is willing to work with Mother to facilitate visitation, (3) cares about Mother's wellbeing in the interest of allowing the children to have a meaningful relationship with Mother, and (4) has demonstrated that he will protect the children.

{¶16} Mother struggles with significant issues that impair her ability to safely parent the children. She admittedly continues to use methamphetamine. Although Mother reported that she no longer allows her boyfriend to stay in her subsidized housing, she admitted that her boyfriend has been physically abusive to her in her home.

{¶17} In addition, Mother appears to suffer from untreated mental health issues that put the children at risk. For example, Father testified that Mother recently let herself into his home in the middle of the night, cut off pieces of E.C.'s pajamas, and poured peroxide on the clothing, before Father awoke and told Mother to leave. Father testified that Mother was acting "off" at the time. During Father's testimony, Mother interjected: "Because I felt as if it was blood and it concerned me. And I wanted [E.C.] to be checked from that point on. And you never took her to the doctor. Like it scared me." Father further testified that, on multiple occasions, Mother has accused him of replacing E.C. and B.C. with other children and has expressed doubt about whether Father is actually Father. The agency caseworker testified that Mother had also called him and reported that Father had sold the children and replaced them with imposters.

{¶18} Father testified that the children are troubled by Mother's erratic behaviors. At times, E.C. cries and states that "she just wants a normal mom[.]" Both E.C. and B.C. attend counseling at school to help them cope with the situation.

{¶19} Father testified that this is the second time that CSB has been involved with the family based on concerns regarding Mother. Although he asserted that Mother "did okay for a period of time" during the prior case, Father testified that Mother's problematic issues resumed after that case was closed. Father testified that he wants legal custody of the children at this point in the case because he does not want to have to return to court every time Mother's behavior raises concerns for the children's wellbeing. As the children's sole legal custodian, he testified that he would be in a better position to make appropriate decisions in the best interest of the children regarding their interactions with Mother.

{¶20} Although no case plan had yet been made an order of the court, the caseworker testified that Mother worked with him to develop her case plan objectives and agreed with them. The caseworker had made referrals for Mother to obtain her mental health and substance abuse assessments. The juvenile court had issued earlier orders directing Mother to obtain a substance abuse assessment and engage in drug court services. When the caseworker asked Mother whether she had obtained her assessments, Mother was confused, "out of sorts," and unsure whether those had occurred during her appointment at Ohio Guidestone. In addition, although Mother had an appointment to appear in drug court, she failed to do so because she had been "detained" at a local hospital based on mental health concerns.

{¶21} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest miscarriage of justice by granting Father's motion for legal custody of E.C. and B.C. and terminating the agency's protective

supervision. The preponderance of the evidence established that Father had consistently provided a safe and stable home for the children and was continuing to do so. The caseworker and guardian ad litem had no concerns regarding Father or his home environment. Mother also recognized the propriety of Father's home when she agreed that the children should be placed in Father's temporary custody. On the other hand, Mother admitted to ongoing methamphetamine use and was exhibiting concerning behaviors and thoughts which posed a risk to the children's wellbeing. Under these circumstances, the juvenile court's finding that an award of legal custody to Father was in the children's best interest is not against the manifest weight of the evidence.

{¶22} To the extent that Mother argues that the juvenile court erred by failing to adopt the agency's case plan and allow her a reasonable time to work toward reunification, this Court disagrees. The agency is required to "prepare and maintain a case plan for any child to whom the agency is providing services" and regarding whom the agency has filed a complaint alleging the child's dependency, neglect, and/or abuse. R.C. 2151.412(A)(1). R.C. 2151.353(E) requires the juvenile court to journalize the agency's case plan as part of the dispositional order. This Court recognizes that "the overriding purpose of the case plan is to allow the agency to assist the parents in remedying the conditions underlying a child's removal so that the child can be returned safely to one or both parents' custody." *In re K.J.*, 9th Dist. Summit No. 29915, 2021-Ohio-4413, ¶ 18, citing *In re S.R.*, 9th Dist. Summit No. 27209, 2014-Ohio-2749, ¶ 45. *See also* R.C. 2151.412(G)(1)(b) (establishing a child's safe return home "with all due speed" as a general case plan goal).

{¶23} "If a child is adjudicated an abused, neglected, or dependent child, the court may * * * [a]ward legal custody of the child to either parent * * *" after a dispositional hearing. R.C. 2151.353(A)(3). There is no statutory requirement that a child first be placed in the temporary

custody of the agency before the child may be returned to the legal custody of a parent. *See, e.g., In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 12-14.

{¶24} In this case, the evidence established that it was in the best interest of E.C. and B.C. to be returned to Father's legal custody after the dispositional hearing. Because the juvenile court terminated CSB's protective supervision, there were no outstanding issues to be resolved, and the case was closed. Under those circumstances, there was no need for the juvenile court to adopt and journalize the agency's proposed case plan, as the goal of reunification of the children with a parent had been accomplished.

{¶25} Although Mother argues that she should have been accorded time to work on her case plan objectives in an effort to regain legal custody of the children, she has cited no authority for the proposition that one parent's interests take precedence over those of another parent. The critical determination is the best interest of the children, and the legislature has determined that timely permanence is a key factor in that regard. Although other best interest factors implicate a child's relationship with parents, there is no requirement under the law to delay a child's reunification with one parent merely to allow the other parent time to address concerns which preclude the safe return of the child to that parent. In other words, the law does not prioritize one parent's parental rights over another's in these types of cases. Contrary to Mother's argument that "Father and the [juvenile court] attempted to short-circuit the process" in this case by awarding legal custody to Father after the initial dispositional hearing, this Court concludes that the juvenile court acted within its statutory authority and restored stability for the children by resolving the issue of custody in their best interest. Mother's assignment of error is overruled.

III.

{¶26} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.


APPEARANCES:

ADAM M. VANHO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JAMES E. BRIGHTBILL, Attorney at Law, for Appellee.

BENJAMIN AYERS, Guardian ad Litem.