[Cite as *In re H.-A.C. M.*, 2022-Ohio-2912.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

IN RE: H.-A.C. M.

C.A. No.     22CA0006-M


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     2021 09 DE 0043

DECISION AND JOURNAL ENTRY

Dated: August 22, 2022

CALLAHAN, Judge.

{¶1}    Appellant Mother appeals the judgment of the Medina County Court of Common Pleas, Juvenile Division, that granted legal custody of her child to the child's maternal grandmother ("Grandmother").  This Court affirms.

I.

{¶2}    Mother and Father are the biological parents of H.-A.C. M., born January 18, 2019. Mother was the child's sole legal custodian.  Father had not had a significant presence in the child's life and was serving a prison sentence in California at all times during the juvenile court proceedings below.  At some time prior to the initiation of the juvenile dependency case, Mother was charged with felonies in California and Georgia.  As Mother was being held in a detention center in California on various charges, including murder, Grandmother was caring for H.-A.C. M. in Ohio, and was able to obtain a limited guardianship of the child.  Because of jurisdictional issues, she was unable to assume the child's permanent guardianship.  As the child needed

someone who was available and authorized to make medical and educational decisions on his behalf, and the limited guardianship was about to expire, Medina County Job and Family Services ("JFS" or "the agency") filed a complaint in which it alleged that H.-A.C. M. was a dependent child. At the same time, the agency moved for a predispositional order of temporary custody. JFS did not remove the child but allowed him to remain in Grandmother's home.

{¶3} A week later, the magistrate issued a decision granting predispositional custody to JFS. The decision indicated that neither Mother nor Father was present but that they had been duly notified of the hearing. The juvenile court subsequently adopted the magistrate's decision and served that journal entry on the attorney the court had recently appointed to represent Mother.

{¶4} JFS filed a proposed case plan. Grandmother, as the child's caregiver, was required to continue to provide for the child's basic needs and ensure that he was engaged in Early Intervention services. Both Mother and Father were required to contact the JFS caseworker upon their respective releases from incarceration to collaborate regarding substantive case plan objectives and visitation schedules.

{¶5} A week prior to the adjudicatory hearing, JFS filed an amended complaint, requesting legal custody of the child to Grandmother, or alternatively, temporary custody to the agency. JFS requested that the clerk of court serve Mother and Father with the amended complaint by certified mail where each was incarcerated in California.

{¶6} According to the juvenile court's journal entry, Mother did not attend the adjudicatory hearing, but she was represented by counsel who informed the judge that Mother agreed to the child's adjudication as a dependent child. As Father was neither present nor represented, the court held an evidentiary hearing. Citing Mother's stipulation to dependency, both parents' incarcerations, Mother's multiple pending felony charges in two states, and the

termination of the child's limited guardianship, the juvenile court adjudicated H.-A.C. M. dependent.

**{¶7}** The juvenile court subsequently held a dispositional hearing. The court's dispositional journal entry notes that Mother's attorney appeared virtually for the hearing, while Mother and Father were not present for disposition "although [both were] duly notified[.]"

**{¶8}** After the conclusion of the dispositional hearing, the juvenile court granted legal custody of the child to Grandmother. The court enumerated the efforts made by JFS to remedy the circumstances that led to the child's removal but found that the "complex nature of the circumstances precluded remedy prior to hearing." Specifically, the court found that the "[c]hild cannot be reunified at this time due to Mother's and Father's current incarceration. Mother and Father are expected to be incarcerated for the foreseeable future in the State of California."

**{¶9}** Mother wrote a letter to the juvenile court, requesting appointed counsel for purposes of appealing the juvenile court's award of legal custody to Grandmother. The juvenile court appointed appellate counsel who filed a timely notice of appeal from the judgment on Mother's behalf. Mother raises two assignments of error for consideration.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT VIOLATED
MOTHER'S FUNDAMENTAL RIGHT TO DUE PROCESS AND GRANTED
LEGAL CUSTODY TO MATERNAL GRANDMOTHER WHEN MOTHER
WAS NOT PRESENT AT THE PROCEEDINGS.

**{¶10}** Mother argues that she was deprived of due process when the juvenile court conducted the legal custody hearing in her absence. This Court disagrees.

**{¶11}** In support of her argument, Mother cites to this Court's determination in *In re Frasher*, 9th Dist. Summit No. 18100, 1997 WL 537666, *2 (Aug. 20, 1997), that an absent

parent's due process rights in a custodial dispositional hearing are not violated as long as the parent is represented by counsel at the hearing, the trial court makes a full record of the hearing, and "any testimony that [the absent parent] may wish to present could be presented by way of deposition." Mother does not dispute that she had appointed counsel who was present and represented her interests during the legal custody hearing. She also does not dispute that the juvenile court made a full record of that hearing. That record is before this Court for consideration.

{¶12} Mother argues solely that she was deprived of due process because her absence prevented her from testifying or otherwise presenting evidence on her behalf. Specifically, Mother argues that she might have appeared for the hearing via a Zoom connection, as others were permitted to do so due to Covid-19 pandemic protocols. Mother's argument is not persuasive.

{¶13} The record contains clear indications that Mother had contact with her attorney throughout the case. She does not allege that her attorney failed to provide her with the Zoom link so that she might have attempted to coordinate with officials in California where she was incarcerated to join the hearing remotely. Mother does not argue that she would have had access to technology while incarcerated so that she could have attended the hearing remotely. Finally, she does not assert that she had expressed any interest to her attorney or the court either that she attend remotely or be deposed for purposes of providing her testimony for consideration during the hearing.

{¶14} Akin to the situation in *In re Frasher*, Mother was represented by counsel who cross-examined the agency's witness and advocated Mother's position to the court, the court made a full record of the proceedings, there were no assurances that Mother would have had access to the necessary technology to appear remotely for the hearing from the justice center in which she was incarcerated, and Mother "did not offer to present any testimony by way of deposition." *See*

*id.* at \*2. Accordingly, Mother's absence from the legal custody hearing did not result in a deprivation of her due process rights.

{¶15} This Court's conclusion here is bolstered by our reasoning in *In re Frasher* on which Mother relies:

> The risk of an erroneous deprivation of [Mother's] rights in this case was extremely small and was greatly outweighed by the government's interest in ensuring the child's best interests in an expedited manner. In determining the best interest of the child, there must be a point of finality where a child can no longer be kept in an uncertain environment for an indeterminable amount of time. A child must be given the opportunity to find permanency and stability.

*Id.* at \*2, citing *In re Swisher*, 9th Dist. Summit No. 17879, 1997 WL 164311, \*3 (Apr. 2, 1997).

{¶16} Mother was incarcerated awaiting trial in California on serious felony charges, including murder. After those charges are resolved, Mother must address additional felony charges in Georgia. The caseworker testified that those criminal matters would likely take "quite a while" to resolve and that Mother's pretrial incarceration on all those charges was "indefinite." In the meantime, Mother had entrusted the child's care to Grandmother who was not able to provide for the child's educational and medical needs without being legally designated as either the child's guardian or legal custodian. The award of legal custody to Grandmother at this time, when Mother would not be available to care for the child in the reasonably foreseeable future, serves to provide H.-A.C. M. with the opportunity for permanence and stability. Mother's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED LEGAL CUSTODY TO MATERNAL GRANDMOTHER WHEN THE AGENCY DID NOT PROVIDE REASONABLE REUNIFICATION EFFORTS.

**{¶17}** Mother argues that the juvenile court erred by granting legal custody of the child to Grandmother when JFS had not used reasonable efforts to attempt to reunify the child with Mother. This Court disagrees.

**{¶18}** This Court has explained:

The law imbues parents with the substantial right to raise their children and concomitantly entitles them to all legally permissible procedural and substantive protections. *In re C.S.*, 9th Dist. Summit Nos. 29927, 29929, and 29938, 2021-Ohio-3182, ¶ 25. These include the child welfare agency's obligation to make reasonable efforts to reunify children with one or both parents. *Id*. The case plan is the tool used by the agency to facilitate family reunification efforts. *In re H.S.*, 9th Dist. Summit Nos. 28944 and 28948, 2018-Ohio-3360, ¶ 18. In fact, the overriding purpose of the case plan is to allow the agency to assist the parents in remedying the conditions underlying a child's removal so that the child can be returned safely to one or both parents' custody. *In re S.R.*, 9th Dist. Summit No. 27209, 2014-Ohio-2749, ¶ 45.

*In re K.J.*, 9th Dist. Summit No. 29915, 2021-Ohio-4413, ¶ 18.

**{¶19}** A public children services agency like JFS is required to "prepare and maintain a case plan for any child to whom the agency is providing services and [regarding] whom * * * [t]he agency filed a complaint * * * alleging that the child is an abused, neglected, or dependent child[.]" R.C. 2151.412(A)(1). The juvenile court must journalize the case plan as part of its initial dispositional order, at which time all parties to the proceedings are bound by the terms of the case plan. R.C. 2151.353(E); R.C. 2151.412(F)(1).

**{¶20}** While children are frequently placed in the temporary custody of the agency for the initial disposition, R.C. 2151.353(A) authorizes the juvenile court to make any one of six enumerated dispositional orders at that time after adjudication. Relevant to this case is subsection (A)(3) which provides:

*[After a child is adjudicated, the juvenile court may] [a]ward legal custody of the child* to either parent or *to any* other *person who, prior to the dispositional hearing,* files a motion requesting legal custody of the child or *is identified as a proposed legal custodian in a complaint* or motion filed prior to the dispositional hearing by

any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains [the relevant provisions.]"

(Emphasis added.) R.C. 2151.353(A)(3).

**{¶21}** In this case, the juvenile court found that the evidence adduced at the initial dispositional hearing established that an award of legal custody of H.-A.C. M. to Grandmother was in the child's best interest. Mother does not challenge that finding or argue that the judgment is against the manifest weight of the evidence. Nor does she dispute that Grandmother signed the requisite statement of understanding for legal custody. Because the award of legal custody fully resolved the issue of the child's disposition and left no outstanding issues for the juvenile court's determination, the case was closed at that point. As permanency for the child had been accomplished, the adoption and journalization by the court of the agency's proposed case plan was not required. *See In re E.C.*, 9th Dist. Summit Nos. 30096 and 30097, 2022-Ohio-1223, ¶ 24. Accordingly, JFS was not required to use ongoing reasonable efforts to attempt to facilitate the reunification of H.-A.C. M. with Mother. Mother's second assignment of error is overruled.

III.

**{¶22}** Mother's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

RANDALL C. BRAY, Attorney at Law, for Appellant.

MELISSA ZAWADZKI, Attorney at Law, for Appellee.