[Cite as *In re E.C.*, 2025-Ohio-4820.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: E.C.
     E.C.

C.A. Nos.    31531
               31532

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   DN 24-03-151
            DN 24-03-152

DECISION AND JOURNAL ENTRY

Dated: October 22, 2025

HENSAL, Judge.

{¶1} Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that awarded legal custody of two of her children to Appellee Father. This Court affirms.

I.

{¶2} Mother and Father are the biological parents of E.C.1, born December 3, 2013; and E.C.2, born July 25, 2017. Mother also has two younger children, C.R. and J.R., who were living with her and their biological father. While E.C.1 and E.C.2 resided with Mother during the week, those children spent every weekend with Father pursuant to a shared parenting plan in the home he shared with his parents and grandparents.

{¶3} In March 2024, then three-year-old J.R. found and ingested one of Mother's 1,000 mg THC gummies. J.R. became unresponsive and was hospitalized. Summit County Children

Services Board ("CSB" or "the agency") removed all four children from Mother's home and filed complaints alleging that J.R. was an abused and dependent child, and that E.C.1, E.C.2, and C.R. were dependent children. The agency placed E.C.1 and E.C.2 with Father upon their removal from Mother's home. Mother and Father both appeared at shelter care, waived their rights to a hearing, stipulated to probable cause for the removal of E.C.1 and E.C.2 from Mother's home, and agreed to an order of emergency temporary custody to Father under the agency's protective supervision. The magistrate further granted Mother supervised visitation for two hours per week "as agreed and arranged with Father[.]"

{¶4} Both parents appeared for adjudication, waived their rights to a hearing, and stipulated to the facts alleged in the complaints and amended complaints. In addition to J.R.'s overdose, the complaints alleged that Mother reported certain mental health diagnoses and admitted using marijuana since she was nine years old to cope with her trauma. Mother tested positive for THC, fentanyl, and norfentanyl after submitting to an oral drug swab administered by CSB. She had been charged with child endangering based on the children's access to drugs in the home. Moreover, the children and home were very dirty when the agency investigated. E.C.1, who was ten years old at the time of her removal, was very parentified and had assumed responsibility for cleaning the home, feeding her younger siblings, and keeping them safe. Based on the parties' stipulations, the juvenile court adjudicated E.C.1 and E.C.2 dependent children. The trial court further referred Mother to Family Reunification through Recovery Court ("FRRC") and ordered her to attend a status hearing within 14 days and complete a drug and alcohol assessment within 30 days.

{¶5} Mother and Father both appeared and waived their rights to an initial dispositional hearing. The parties agreed to an order placing E.C.1 and E.C.2 in Father's legal custody under

CSB's protective supervision. The juvenile court adopted the agency's case plan as an order. The case plan required Mother to demonstrate that she could meet the children's basic needs by maintaining sufficient income and safe, clean housing; and to obtain mental health and substance abuse assessments, follow all recommendations, and submit to random drug screens. Father had a basic needs objective which addressed income, housing, and medical/dental/optical care for the children. Father was also required to facilitate trauma assessments for the children, ensure that they followed the professionals' recommendations, and sign all necessary releases of information.

{¶6} Mother was accepted into FRRC where she participated consistently in services. While she tested negative for substance use on occasion, she was never able to sustain her sobriety for the minimum 14-day period required to advance from Phase I to Phase II of the program. After five months during which Mother failed to achieve sustained sobriety, CSB moved to discharge Mother unsuccessfully from FRRC.

{¶7} Father moved for legal custody of E.C.1 and E.C.2. Both CSB and the guardian ad litem supported Father's motion. After a sunset hearing, the magistrate granted Father's motion, placed the children in his legal custody, terminated CSB's protective supervision, and awarded Mother supervised visitation. Mother timely objected and CSB responded in opposition.

{¶8} The juvenile court overruled Mother's objection, finding that legal custody to Father was in the children's best interest. The trial court reiterated the orders enunciated by the magistrate. Mother appealed, raising two assignments of error for review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS GRANT OF LEGAL CUSTODY OF THE MINOR CHILDREN TO THEIR FATHER.

{¶9}    Mother argues that the juvenile court's award of legal custody to Father is against the manifest weight of the evidence.  This Court disagrees.

{¶10}  Our standard of review is well settled:

On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence.  Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value.  In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest.

(Internal citations and quotations omitted.)  *In re M.F.*, 2016-Ohio-2685, ¶ 7 (9th Dist.).

{¶11}  In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered."  (Internal citations and quotations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.  When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact."  *Id.* at ¶ 21.

{¶12}  "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child."  *In re K.H.*, 2016-Ohio-1330, ¶ 12 (9th Dist.).  The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best

interest of the child. *In re B.B.*, 2016-Ohio-7994, ¶ 18 (9th Dist.), quoting *In re N.P.*, 2004-Ohio-110, ¶ 23 (9th Dist.). In that regard, the juvenile court is guided by the best interest factors enumerated in Revised Code Section 2151.414(D) relating to permanent custody. *In re B.G.*, 2008-Ohio-5003, ¶ 9 (9th Dist.), citing *In re T.A.*, 2006-Ohio-4468, ¶ 17 (9th Dist.).

{¶13} The best interest factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in Section 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 2014-Ohio-2748, ¶ 16 (9th Dist.). In addition, the juvenile court may also look to the best interest factors in Section 3109.04(F)(1) for guidance. *In re K.A.*, 2017-Ohio-1, ¶ 17 (9th Dist.). While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶14} E.C.1 and E.C.2 were ten and six years old, respectively, when CSB removed them from Mother and placed them in Father's home. During the two years prior to that, the children spent every weekend with Father pursuant to the terms of the parents' shared parenting plan. Father's involvement with the children was more limited before that time. Although Mother would have been the primary adult caregiver for the children before Father resumed a more active role in their lives, E.C.1 assumed much of the responsibility for caring for her siblings in Mother's home, resulting in the oldest child's parentification. After Father assumed temporary and then legal custody during these cases, E.C.1 began to function age-appropriately as a child. The guardian ad litem testified that E.C.1 recognized that her three younger siblings were safe after the children's

removals from Mother's home. Therefore, the child became comfortable allowing the responsible adults to provide care for her brothers and sister.

{¶15} E.C.1 and E.C.2 are closely bonded with one another, as well as with their younger siblings with whom they visit one to two times each week. The children share a strong bond with Father, respect him, and are very comfortable in his home. They acclimated to living there full-time very quickly because of their consistent weekend visits during the two years prior to these cases. E.C.1 and E.C.2 each adapted smoothly to their current school environments, where both do well academically, have made friends, and are involved in extra-curricular activities. The children are close with their paternal grandparents, Father's girlfriend, and her son.

{¶16} E.C.1 and E.C.2 love Mother and have a good relationship with her boyfriend who is the father of their younger siblings. However, both the caseworker and Mother testified that it is unknown whether Mother's boyfriend will remain in her home due to the evolving nature of their relationship. C.R. and J.R. were placed with a foster family, and their final dispositions have not yet been determined. The foster family and maternal grandmother have facilitated sibling visits, which the children enjoy.

{¶17} The guardian ad litem testified that E.C.1 and E.C.2 have been consistent regarding their desires for custody. E.C.1 wants to live with Father and see Mother every other weekend. The eleven-year-old emphasized, however, that she wants the flexibility to have sleepovers with friends and spend time being a child. E.C.2 also wants to live with Father because he likes his school and home environment. He also wants to see Mother on weekends.

{¶18} The guardian ad litem opined that placing the children in Father's legal custody and terminating CSB's protective supervision would be in their best interest. She reported that Father was meeting the children's basic needs and that they were thriving in his care. The guardian ad

litem testified that the past year had been emotionally taxing on the children, not knowing what their living situation would ultimately be. She asserted that they deserved permanence and that Father had demonstrated his willingness and ability to provide that for them.

{¶19} While Mother had been working diligently toward complying with her case plan objectives, she remained unable to achieve a sustained period of sobriety. She admitted that she struggled to end her 18-year dependence on marijuana, the substance she had used since the age of nine to help her sleep and avoid nightmares. Mother testified that she obtained a prescription and medical marijuana card the day before the hearing, but that she hoped her recent participation in EMDR, trauma-focused psychotherapy, would help her develop coping skills without the need for marijuana.

{¶20} The caseworker testified that he had no concerns about Mother's use of marijuana as long as she used it as prescribed and outside the view of the children, and if she ensured that it, and her prescribed methadone, were stored under lock where the children would not have access to them. He emphasized the need to secure the substances away from the children particularly in light of J.R.'s overdose after finding and ingesting a THC gummy in Mother's home.

{¶21} The caseworker and guardian ad litem remained concerned that Mother lacked insight regarding the importance of securing her THC and methadone. The guardian ad litem testified that she learned on February 12, 2025, that Mother had left THC vape cartridges on her dresser. When she attended a visit in Mother's home on February 20, she entered the bedroom and saw multiple cartridges still on the dresser where any of the children who were then visiting could access them. The guardian ad litem was particularly concerned about the presence of THC cartridges in the home because Mother had told her that she was not using THC anymore.

Moreover, the guardian ad litem noticed that the closet where Mother said she kept her methadone under lock was open. After looking for the padlock, Mother closed and locked the closet.

{¶22} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and created a manifest miscarriage of justice by granting legal custody of E.C.1 and E.C.2 to Father and terminating CSB's protective supervision. Both children are safe, secure, and comfortable in Father's home where all their needs are met. The caseworker and guardian ad litem had no concerns about Father's ability to parent the children appropriately. Both children wished to continue to live with Father and visit with Mother. The guardian ad litem opined that legal custody to Father and supervised visitation with Mother would be in the children's best interest. Although the parents did not have a good relationship, Father was facilitating weekly visits and further allowed the maternal grandmother to bring the children to Mother's home for additional weekend visits.

{¶23} On the other hand, Mother was not in a position to resume custody of the children. She was unable to achieve sustained sobriety at a time when she had no prescription for medical marijuana and was involved in FRRC. Although she obtained medical authorization to use THC, as well as methadone, she had not demonstrated an understanding that she had to ensure that those substances were secured to prevent access by the children. Despite the overdose of her three-year-old child that led to CSB's involvement with the family, Mother left THC cartridges and methadone accessible to the children while they were visiting in her home shortly before the hearing.

{¶24} The preponderance of the evidence established that Father was able at the time of the hearing to provide a safe and stable home for the children. Given the propriety of Father's home, there was no reason to delay permanence via reunification of the children with a parent. *See*

*In re E.C.*, 2022-Ohio-1223, ¶ 25 (9th Dist.). Accordingly, the juvenile court's judgment awarding legal custody to Father is not against the manifest weight of the evidence. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS REFUSAL TO GRANT A SIX-MONTH EXTENSION [OF TEMPORARY CUSTODY].

{¶25} Mother argues that the juvenile court erred by failing to order a six-month extension of temporary custody under Section 2151.415(D)(1). This Court disagrees.

{¶26} First, there was no motion to extend temporary custody pending for the trial court's consideration at the sunset dispositional hearing. Second, E.C.1 and E.C.2 were never in CSB's temporary custody. The juvenile court initially placed the children in Father's emergency temporary custody but shortly thereafter awarded him legal custody under the agency's protective supervision with the parties' agreement. As Father held legal custody at the time of the hearing, there was no order of temporary custody the juvenile court could have extended. Mother's second assignment of error is overruled.

III.

{¶27} Mother's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

FLAGG LANZINGER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and AARON B. CAMPBELL, Asssistant Prosecuting Attorney, for Appellee.

NEIL P. AGARWAL, Attorney at Law, for Appellee.

HOLLY FARAH, Guardian ad Litem.